AMASA R. MOORE, Appellant, *v.* JOHN M. FRANCIS et al., Respondents.

In an action for libel, where the publication is admitted and the words are unambiguous and admit of but one sense, the question as to whether they are libellous is one of law which the court must decide, and a submission thereof to the jury is error.

Words written or spoken of a man in relation to his business or occupation which will have a tendency to hurt, or are calculated to prejudice him therein, are actionable, although they charge no fraud or dishonesty and were uttered without actual malice; and when proved, unless the defendant shows a lawful excuse, the plaintiff is entitled to recover, without allegation or proof of special damage, as both the falsity of the words and resulting damage are presumed.

Words imputing insanity are actionable, *per se*, when written or spoken of one occupying a position of trust and confidence, in relation to his occupation; but not otherwise, without proof of special damage.

Written words are libellous in all cases where, if spoken, they would be actionable, and may be libellous when they would not support an action for slander.

An article was published in defendant's newspaper which stated, in substance, that plaintiff was teller of a certain bank, and while acting in that capacity became mentally deranged from overwork, and that when probably not responsible for what he said, he made injurious statements in respect to the bank's affairs, which occasioned it trouble. In an action for libel, *held*, that the publication was, in a legal sense, defamatory and libellous.

It is not a legal excuse that a newspaper publishes defamatory matter accidentally, or inadvertently, or with good motives, and in an honest belief in its truth.

(Argued March 19, 1890; decided April 15, 1890.)

Appeal from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made December 8, 1888, which affirmed a judgment in favor of defendant entered upon a verdict and affirmed an order denying a motion for a new trial.

The nature of the action and the material facts are stated in the opinion.

*Matthew Hale* for appellant.   The court erred in submitting to the jury the question whether the article in question was libellous. (*Snyder* v. *Andrews*, 6 Barb. 43 ; *Green* v. *Telfair*, 20 id. 11 ; *Hunt* v. *Bennett*, 19 N. Y. 173 ; *Pittock* v. *O'Neil*, 63 Penn. St. 253 ; *Matthews* v. *Beach*, 5 Sandf. 250 ; *More* v. *Bennett*, 48 N. Y. 472 ; *Kingsbury* v. *B. Co.*, 35 Hun, 212 ; 116 N. Y. 211 ; *Woodruff* v. *B. Co.*, Id. 217 ; Odgers on Libel, 23 ; *Southwick* v. *Stevens*, 10 Johns. 443 ; *Perkins* v. *Mitchell*, 31 Barb. 461, 465 ; Townshend on Slander and Libel, §§ 181, 182 ; *Foulger* v. *Newcomb*, L. R. [2 Exch.] 327 ; Newell on Defamation, 168, § 1 ; *Sanderson* v. *Caldwell*, 45 N. Y. 398, 405.)   The court erred in refusing to charge that the plaintiff was entitled to a verdict, and that the only question for the jury was as to the proper amount of damages.   (*Wachter* v. *Quenzer*, 29 N. Y. 552 ; *Hathorn* v. *C. S. Co.*, 44 Hun, 608 ; Townshend on Slander, §§ 40, 87.)   The court erred in permitting evidence to be given tending to show the defalcation by the cashier, and collusion or negligence on the part of the plaintiff in relation thereto.   (*Willover* v. *Hill*, 72 N. Y. 36, 38 ; *Blanchard* v. *Tulip*, 32 Hun, 638.)   The question, "had you heard any rumors about what statements Mr. Moore had made about the bank and some of its officers ?" was improperly admitted, and the objection thereto improperly overruled.   (*Mapes* v. *Weeks*, 4 Wend. 659 ; *Bodwell* v. *Swan*, 3 Pick. 378 ; *Matson* v. *Buck*, 5 Cow. 449 ; *Walcott* v. *Hall*, 6 Mass. 514 ; *Alderman* v. *French*, 1 Pick. 1 ; *Willover* v. *Hill*, 72 N. Y. 36, 38 ; *Hatfield* v. *Lasher*, 81 id. 246, 250.)   No justification was pleaded in this case ; the answer was, in the language of the alleged

libel, that "at the time alluded to in said article the mind of said plaintiff was temporarily affected; and that while in such unsound mental condition he had made statements which were prejudicial to the credit of the said bank." This was not good pleading. It was not an answer under which the defendants had a right to give evidence by way of justification. (*Wachter* v. *Quenzer*, 29 N. Y. 547; *Tilson* v. *Clark*, 45 Barb. 178; *Ball* v. *E. P. P. Co.*, 38 Hun, 11, 15, 16; *Knox* v. *C. Agency*, 40 id. 508; *Hathorn* v. *C. S. Co.*, 44 id. 608.)

*R. A. Parmenter* for respondents.

Under the answer every particle of evidence given by the defendants was competent. (Code Civ. Pro. § 535; *Bush* v. *Prosser*, 11 N. Y. 347; *Taylor* v. *Church*, 8 id. 452; *Gilman* v. *Lowell*, 8 Wend. 573; *Goodman* v. *Stroheim*, 4 J. & S. 216; 4 Field's Briefs, 421; *Skinner* v. *Powers*, 1 Wend. 541.) The action for a libel injurious to business cannot be maintained in the absence of malice, or a willful purpose to inflict injury, and this must be shown. (*Hovey* v. *P. Co.*, 1 J. & S. 522; 57 N. Y. 119.) The words charged are not in themselves libellous. (2 Kent's Comm. 16; *People* v. *Crosswell*, 3 Johns. Ch. 337, 354; *Steele* v. *Southwick*, 9 Johns. 214; *Matthews* v. *Beach*, 5 Sandf. 256, 265; *Snyder* v. *Andrews*, 6 Barb. 48; *Dexter* v. *Tabor*, 12 Johns. 240; *Van Rensselaer* v. *Cole*, 1 Johns. Ch. 249; *McKinley* v. *Rob*, 20 Johns. 356; *Dolloway* v. *Turrell*, 26 Wend. 383; *Stanley* v. *Webb*, 21 Barb. 148; *Bayliss* v. *Lawrence*, 11 Ad. & El. 920.)

ANDREWS, J. The alleged libellous publication which is the subject of this action was contained in the "Troy Times" of September 15, 1882, in an article written on the occasion of rumors of trouble in the financial condition of the Manufacturers' National Bank of Troy, of which the plaintiff was, at the time of the publication, and for eighteen years prior thereto had been, teller. The rumors referred to had caused a "run" upon the bank, and it is claimed by the defendants, and it is the fair conclusion from the evidence that the pri-

mary motive of the article was to allay public excitement on the subject.

That part of the publication charged to be libellous is as follows:

"Several weeks ago it was rumored that Amasa Moore, the teller of the bank, had tendered his resignation. Rumors at once began to circulate. A reporter inquired of Cashier Wellington if it was true that the teller had resigned, and received in reply the answer that Mr. Moore was on his vacation. More than this the cashier would not say. A rumor was circulated that Mr. Moore was suffering from overwork, and that his mental condition was not entirely good. Next came reports that Cashier Wellington was financially involved, and that the bank was in trouble. A Times reporter at once sought an interview with President Weed of the bank, and found him and directors Morrison, Cowee, Bradwell and others in consultation. They said that the bank was entirely sound, with a clear surplus of $100,000; that there had been a little trouble in its affairs occasioned by the mental derangement of Teller Moore, and that the latter's statements, when he was probably not responsible for what he said, had caused some bad rumors."

The complaint is in the usual form, and charges that the publication was false and malicious, made with intent to injure the plaintiff in his good name and credit in his occupation as bank teller, and to cause it to be believed that by reason of mental derangement he had become incompetent to discharge his duties, and had caused injury to the bank, etc.

The court on the trial was requested by the plaintiff's counsel to rule as a question of law that the publication was libellous. The court refused, but submitted the question to the jury. The jury found a verdict for the defendants, and as the verdict may have proceeded upon the finding that the article was not libellous, the question is presented whether it was *per se* libellous. If it was, the court erred in leaving the question to the jury. It is the settled law of this state that in a civil action for libel, where the publication is admitted and

the words are unambiguous and admit of but one sense, the question of libel or no libel is one of law which the court must decide. (*Snyder* v. *Andrews*, 6 Barb. 43; *Matthews* v. *Beach*, 5 Sandf. 256; *Hunt* v. *Bennett*, 19 N. Y. 173; *Lewis* v. *Chapman*, 16 id. 369; *Kingsbury* v. *Bradstreet Co.*, 116 id. 211.) Of course, an error in submitting the question to the jury would be harmless if their finding that the publication was not libellous was in accordance with its legal character. The import of the article, so far as it bears upon the plaintiff, is plain and unequivocal. The words amount to a distinct affirmation: first, that the plaintiff was teller of the bank; second, that while acting in this capacity he became mentally deranged; third, that the derangement was caused by overwork; fourth, that while teller, and suffering from this mental alienation, he made injurious statements in respect to the bank's affairs, which occasioned it trouble.

The cases of actionable slander were defined by Chief Justice DeGrey, in the leading case of *Onslow* v. *Horne* (3 Wilson, 177), and the classification made in that case has been generally followed in England and this country. According to this classification, slanderous words are those which (1) import a charge of some punishable crime; or (2) impute some offensive disease which would tend to deprive a person of society; or (3) which tend to injure a party in his trade, occupation, or business; or (4) which have produced some special damage.

Defamatory words, in common parlance, are such as impute some moral delinquency or some disreputable conduct to the person of whom they are spoken. Actions of slander for the most part are founded upon such imputations; but the action lies in some cases where the words impute no criminal offense, where no attack is made upon the moral character, nor any charge of personal dishonor. The first and larger class of actions are those brought for the vindication of reputation, in its strict sense, against damaging and calumnious aspersions. The other class fall, for the most part, at least within the third specification in the opinion of Chief Justice DeGrey, of words which tend to injure one in his trade or occupation. The case

of words affecting the credit of a trader, such as imputing bankruptcy or insolvency, is an illustration. The action is maintainable in such a case, although no fraud or dishonesty is charged, and although the words were spoken without actual malice. The law allows this form of action, not only to protect a man's character as such, but to protect him in his occupation also against injurious imputations. It recognizes the right of a man to live, and the necessity of labor, and will not permit one to assail by words the pecuniary credit of another, except at the peril, in case they are untrue, of answering in damages. The principle is clearly stated by BAYLEY, J.; in *Whittaker* v. *Bradley* (7 D. & R. 649): "Whatever words have a tendency to hurt, or are calculated to prejudice a man who seeks his livelihood by any trade or business, are action-able." When proved to have been spoken in relation thereto, the action is supported, and unless the defendant shows a law-ful excuse, the plaintiff is entitled to recover without allegation or proof of special damage, because both the falsity of the words and resulting damage are presumed. (1 Saund. 243, n.; 1 Am. Ldg. Cas. 135.)

The authorities tend to support the proposition that spoken words imputing insanity are actionable, *per se*, when spoken of one in his trade or occupation, but not otherwise, without proof of special damage. (*Morgan* v. *Lingen*, 8 L. T. Rep. 800; *Joannes* v. *Burt*, 6 Allen, 236.) The imputation of insanity in a written or printed publication is *a fortiori* libellous where it would constitute slander, if the words were spoken. Writ-ten words are libellous in all cases where, if spoken, they would be actionable, but they may be libellous where they would not support an action for oral slander. There are many definitions of libel. The one by Hamilton, in his argument in *People* v. *Croswell* (3 Johns. Cas. 203), viz.: "A censorious or ridiculing writing, picture or sign, made with malicious intent towards government, magistrates or individuals," has been often referred to with approval; but, unless the word *censorious* is given a much broader signification than strictly belongs to it, the definition would not seem to comprehend all

cases of libellous words. The word "libel," as expounded in the cases, is not limited to written or printed words which defame a man, in the ordinary sense, or which impute blame or moral turpitude, or which criticise or censure him. In the case before referred to, words affecting a man injuriously in his trade or occupation, may be libellous, although they convey no imputation upon his character. Words, says Starkie, are libellous if they affect a person in his profession, trade or business, "by imputing to him any kind of fraud, dishonesty, misconduct, incapacity, unfitness or want of any necessary qualification in the exercise thereof." (Starkie on Slander, § 188.)

The cases of libel founded upon the imputation of insanity are few. The declaration in *Morgan* v. *Lingen* (*supra*), contained a count for libel and also for verbal slander. The alleged libel was in a letter written by the defendant, in which he states that "he had no doubt the plaintiff's mind was affected, and that seriously," and also that "she had a delusion," etc. It appeared that the defendant had also orally stated in substance the same thing. It was claimed that the writing was justified. The plaintiff was a governess. MARTIN, B., in summing up to the jury said that "a statement in writing that a lady's mind is affected, and that seriously, is, without explanation, *prima facie* a libel." In respect to the slander he said, "he thought there was no evidence of special damage. The jury must, therefore, consider whether the defendant intended to use the expression he did with reference to the plaintiff's profession of governess."

In *Perkins* v. *Mitchell* (31 Barb. 465) it was held to be libellous to publish of another "that he is insane and a fit person to be sent to the lunatic asylum," EMOTT, J., saying: "Upon this point the case is clear." *King* v. *Harvey* (2 B. & C. 257) was an information for libel for publishing in a newspaper that the king "labored under mental insanity, and that the writer communicated the fact from authority." The judge charged that the publication was a libel and the charge was held to be correct. The foregoing are the only cases we have noticed upon the point whether a written imputation of insanity

constitutes a libel. Several of the text-writers state that to charge in writing that a man is insane is libellous. (Addison on Torts, 768 ; Townshend on Slander, § 177; Starkie on Slander, 164 ; Ogden on Libel, 23.)

The publication now in question is not simply an assertion that the plaintiff is or has been affected with "mental derangement," disconnected with any special circumstances. The assertion was made to account for the trouble to which the bank had been subjected by reason of injurious statements made by the plaintiff while in its employment. Words to be actionable on the ground that they affect a man in his trade or occupation, must, as is said, touch him in such trade or occupation ; that is, they must be shown, directly or by inference, to have been spoken of him in relation thereto and to be such as would tend to prejudice him therein. (*Sanderson* v. *Caldwell*, 45 N. Y. 405.) The publication did, we think, touch the plaintiff in respect to his occupation as bank teller. It imputed mental derangement while engaged in his business as teller, which affected him in the discharge of his duties. The words conveyed no imputation upon the plaintiff's honesty, fidelity or general capacity. They attributed to him a misfortune, brought upon him by an over-zealous application in his employment. While the statement was calculated to excite sympathy, and even respect for the plaintiff, it nevertheless was calculated also to injure him in his character and employment as a teller. On common understanding, mental derangement has usually a much more serious significance than mere physical disease. There can be no doubt that the imputation of insanity against a man employed in a position of trust and confidence such as that of a bank teller, whether the insanity is temporary or not, although accompanied by the explanation that it was induced by overwork, is calculated to injure and prejudice him in that employment, and especially where the statement is added that in consequence of his conduct in that condition the bank had been involved in trouble. The directors of a bank would naturally hesitate to employ a person as teller, whose mind had once given away under stress of

similar duties, and run the risk of a recurrence of the malady. The publication was, we think, defamatory in a legal sense, although it imputed no crime and subjected the plaintiff to no disgrace, reproach or obloquy, for the reason that its tendency was to subject the plaintiff to temporal loss and deprive him of those advantages and opportunities, as a member of the community, which are open to those who have both a sound mind and a sound body. The trial judge, therefore, erred in not ruling the question of libel as one of law. The evidence renders it clear that no actual injury to the plaintiff was intended by the defendants, but it is not a legal excuse that defamatory matter was published accidentally or inadvertently, or with good motives and in an honest belief in its truth.

The judgment should be reversed and a new trial granted. All concur.

Judgment reversed.