ERNEST JESPER, Appellant, v. THE PRESS PUBLISHING COMPANY,
Respondent.

*Verdict — action for libel — errors in the charge which are not cured by a verdict for
the plaintiff.*

A respondent to uphold a verdict must show that the errors complained of could
not have affected it.

In an action for personal injuries, or injuries to property, ordinarily the question
of the right to recover would in no wise be related to the amount of the recov-
ery. But in an action to recover damages for libel, it cannot be said that a jury
might not have given less damages for a publication, the interpretation of
which the court held to be doubtful, than it would have given had the court
charged the publication to be a libel as a matter of law.

APPEAL by the plaintiff, Ernest Jesper, from a judgment of the
Supreme Court in favor of the plaintiff, entered in the office of the
clerk of the county of Kings on the 15th day of March, 1893, upon
the verdict of a jury for $250, after a trial at the Kings County
Circuit, and also from an order made at the Kings County Circuit
on the 9th day of March, 1893, and entered in said clerk's office,
denying the plaintiff's motion to set aside the verdict, and for a
new trial made upon the minutes.

The libel set out in the complaint was the following article alleged
to have been published in a newspaper :

"WANT FOLLOWS HIS DEATH.

"*The Family of Charles Klotz in a sad Plight.*

" The alleged cruel and unprovoked assault upon Charles Klotz
which resulted in his death, by Ernest Jesper, a butcher doing busi-
ness at No. 312 Myrtle avenue, early on the morning of October 18,
has caused widespread indignation among the residents of the east-
ern district. Klotz, in company with Louis Walker, a fellow-work-
man, left Dahm's bakery, where they were employed, at 1:15
o'clock Saturday morning to go home. The two men hurried to
Myrtle avenue in order to catch a car, but just missed it. They
sat down on a fish stand in front of Jesper's shop to wait for a car,
as they had done frequently before. The men were eating some
hot rolls which they had brought from the bakery. As they sat

there chatting and swinging their feet against the side of the stand, Jesper came out and ordered them away. Klotz replied that he was in no hurry, but at the suggestion of Walker started towards the curb, where they would sit and wait for the car.

"Just then, it is alleged, Jesper, who had been holding his right hand behind his back, rushed towards Klotz and struck him several blows about the arms and head with a club. The poor baker fell bleeding to the sidewalk. A patrol wagon took him to the fourth precinct station house, where the ambulance surgeon said he was too drunk to leave the station house, and he was locked up in a cell on the charge of intoxication. Klotz was taken to his home Saturday and subsequently to St. Katharine's Hospital, where he died of a fractured skull.

"Mr. Dahm, Klotz's employer, has sworn that the latter was not drunk, and, moreover, Mrs. Klotz says that the police of the fourth precinct turned over to her $14.30, which they had taken from her husband's pockets, and which was only seventy cents short of fifteen dollars, his week's salary paid him by Mr. Dahm on Friday night. Klotz, Mr. Dahm said, was sober and industrious, and never lost an hour on account of drink. Jesper was arrested and is now in jail, but this is poor consolation for the heart-broken widow, who is left to struggle for a home and a living for herself and four little children, the oldest of which is six years and the youngest only three months. Up to a few months ago the Klotzes had had a little money saved up, but sickness soon swept it away, and now there is not a dollar in the house. 'I shall have to give up my little home here,' said Mrs. Klotz to a *World* reporter last night, 'as I have no money and no relatives in this country. My husband was always kind to us and worked hard to provide for us. We were economical and at times saved a little money, but there was always something to happen that took it from us. I am willing to do sewing or even washing. I can't go out to work because there is no one to take care of the children. I don't know what will become of us,' and the poor woman wept bitterly.

"All the neighbors speak in the highest terms of the Klotzes, and it was said last night that a subscription had been started in aid of the destitute family."

*A. W. Tenney*, for the appellant.

*John M. Bowers* and *Julian G. Buckley*, for the respondent.

CULLEN, J.:

This is an appeal by the plaintiff from a judgment in his favor entered on the verdict of a jury. The action was for libel, and the plaintiff recovered $250 damages.

The plaintiff claims that the court at Circuit erred in submitting to the jury the question whether the publication was a libel, and in refusing to charge that the publication was libelous on its face. We think this claim correct, and that the learned trial court erred in refusing to charge as requested. The article complained of was in no sense a report of a judicial proceeding, but a charge that the plaintiff had committed an unprovoked assault on one Klotz, causing his death. The charge was none the less a libel because it narrated an alleged assault. To sustain a defense of justification it would be necessary to prove not that the offense was alleged, but that it was committed. (*Moore* v. *Francis*, 121 N. Y. 199; Townshend on Libel.)

Therefore, it was also error to charge that if the article simply stated that the plaintiff was charged with crime the defendant was entitled to a verdict.

The most debatable question is whether these errors were cured by the verdict, the jury having found for the plaintiff. The rule is that the respondent, to uphold the verdict, must show that the errors complained of could not have affected it. (*Greene* v. *White*, 37 N. Y. 405.)

In this case it plainly did not affect the verdict so far as the question of the liability of the defendant is concerned, for the jury has found that the publication was a libel. But the question remains whether this error may have affected the matter of damages. Were this an action for personal injuries, or injuries to property, ordinarily the question of the right to recover would in no wise be related to the amount of the recovery. But in an action of this kind, unless special damages are alleged, no proof is given of actual damage. The law assumes damage from the publication of the libel, and the amount of damage depends on the character and severity of the libel. In such a case we cannot say that the jury might not have

given less damages for a publication, the interpretation of which the court held doubtful, than it would have given had the court charged the publication a libel as a matter of law.

The judgment and order denying a new trial should be reversed, and a new trial ordered, costs to abide the event.

PRATT and DYKMAN, JJ., concurred.

Judgment and order denying motion for new trial reversed and new trial ordered, costs to abide the event.