we are asked to sustain the dismissal of the complaint on this ground, as well as by reason of the absence of any connecting link in the proof between the conductor and the defendant company. I think it quite clear, however, that the case was one for the jury, from either point of view.

Judgment reversed, and new trial granted; costs to abide the event. All concur.

(23 Misc. Rep. 409.)

### CADY v. BROOKLYN UNION PUB. CO.

(Supreme Court, Trial Term, Kings County. April, 1898.)

**1. LIBEL PER SE.**
   A false publication in a newspaper of a practicing dentist that he had committed suicide is libelous per se, both as touching him in his profession and generally.

**2. SAME—MALICE.**
   Malice in the defendant in speaking or publishing a slander or libel, which is not qualifiedly privileged, is not essential in order that the plaintiff may recover his actual damage. Malice in such a case has to do only with the question of smart money.

**3. SAME—CIVIL AND CRIMINAL ACTIONS.**
   The difference between libel and slander pointed out; also the difference between what constitutes libel in a civil and in a criminal action.

Action by Edward E. Cady against the Brooklyn Union Publishing Company for libel. Motion to set aside a verdict for plaintiff. Denied.

Motion on the minutes to set aside a verdict for the plaintiff on the ground that the words were not libelous per se, and that therefore, as no special damage had been pleaded, no cause of action was alleged; also on the ground that there was no malice. The alleged libel was a publication in the defendant's newspaper that the plaintiff, a dentist with an office and practicing his profession in the city of Brooklyn, N. Y., had committed suicide the day before, in Baltimore, Md., by shooting himself.

M. L. Towns, for plaintiff.
A. E. Lamb, for defendant.

GAYNOR, J. The trial proceeded mainly on the theory that the published words were libelous per se as touching the plaintiff in his profession, for to publish of him that he had committed suicide was at least as injurious to him in his profession as would be a publication that he had suddenly abandoned his home and practice and gone to parts unknown, and that would be libelous. But I think they were also libelous per se without regard to his profession. The words complained of are not libelous per se as charging a criminal offense, for suicide is not a criminal offense in this state. Darrow v. Society, 116 N. Y. 537, 22 N. E. 1093. It must therefore be owned that they are not libelous per se if the definition of libel which the learned counsel for the defendant cites as from the early case of Onslow v. Horne (1771) 3 Wils. 177, be correct, for in no other respect than as charging a criminal offense could they come within such definition. That case has recently been cited by high judicial authority in the same way and to the same effect as the learned counsel cites

it, viz., in the dissenting opinion in Gates v. Recorder Co., 155 N. Y. 234, 49 N. E. 769, and I suspect that the learned counsel cites it therefrom at secondhand, for the truth is that the court did not in Onslow v. Horne define or pass upon libel at all, but had to do with a judgment for damages for slander only, and professed to define slander only. In the said dissenting opinion it is said:

"This court, in a recent case, adopted the classification of actionable words as defined by Chief Justice De Grey in the leading case of Onslow v. Horne, 3 Wils. 177. According to that classification actionable words are those which (1) import a charge of some punishable crime; (2) impute some offensive disease which would tend to deprive a person of society, or (3) which tend to injure a party in his trade and occupation or business, or (4) which have produced some special damage. Moore v. Francis, 121 N. Y. 199, 23 N. E. 1127. The words complained of in this case do not fall within any of these classes, except the last, and if actionable only by reason of special damage, that was neither alleged nor proven."

. The case before the court was one of libel, and the application of this cited definition to the alleged libelous words, in order to exclude them from the category of words libelous per se, seems to have been inadvertent, for the said definition is not of libel, but only of slander, as I have already said, and it is so given in Moore v. Francis. It is there stated as the rule for "actionable slander," not "actionable words." Although the said definition or classification is given in Moore v. Francis as from Onslow v. Horne, I may mention as a mere aside in passing, that it is not to be found there at all. Presumably the citation was made at secondhand from some careless source. The learned and able judge in the Gates Case continues as follows:

"Formerly words imputing unchastity to a female were not actionable per se, but only when special damages were alleged and shown as the direct result of the charge. Pollard v. Lyon, 91 U. S. 225; Bassell v. Elmore, 48 N. Y. 561; Terwilliger v. Wands, 17 N. Y. 54; Wilson v. Goit, Id. 442; Williams v. Hill, 19 Wend. 305; Odgers, Sland & L. p. 84. But the rule was abrogated in this state by statute (Laws 1871, c. 219; Code, § 1906). And yet this court held, after the rule was abolished, that words infinitely more injurious to a female than those complained of in the case at bar were not actionable, without allegation and proof of special damage as the direct result of the words. Anon., 60 N. Y. 262."

Subject to correction, I may say that this seems to me a continuance of the inadvertence, for I own that I had never before run upon a suggestion that written words imputing incontinence to a woman, or even to a man (More v. Bennett, 48 N. Y. 472), were not libelous per se at common law; and it was with a question of libel that the learned judge was dealing. He was engaged in showing that the printed words there alleged to be libelous, did not come within a definition taken and accepted by him as the definition of "libel," but which was in fact only the definition of "slander." Such spoken words do not constitute slander per se at common law; but is there any question of their constituting libel per se if written and published? It seems trite to mention the difference between slander and libel. From early times the rule is of familiar statement, that not only do oral words which amount to slander per se constitute libel per se if written, but that in addition any written words soever which hold one up to disgrace, hatred, ridicule or contempt, are libelous per se, however much they may fall short of charging a criminal

offense, or of amounting in any other respect to slander if only spoken. Citation for this is unnecessary, and is made only from habit. 3 Bl. Comm. 125; Steele v. Southwick, 9 Johns. 214; Southwick v. Stevens, 10 Johns. 442; Moore v. Francis, 121 N. Y. 199, 23 N. E. 1127; Odgers, Sland. & L. c. 2, p. 21. And upon referring to our statute which the opinion cites, it will be seen that it in terms only enabled a woman to maintain an action "for words hereafter spoken" imputing unchastity to her, without proof of special damage. In other words, it made such spoken words slanderous per se, which they were not at common law. It did not embrace the case of such words when written, for they were libelous per se by the common law, and no such enabling legislation was needed in respect of them. There being no such statute in reference to such words if written, they are now actionable per se if spoken, but not if written, unless by the common law; and who ever suggested that they are not? All of the cases cited in the part of the said opinion last above quoted, are of slander; and later on the recent slander case of Hemmens v. Nelson, 138 N. Y. 517, 34 N. E. 342, is cited. Probably the words there, and without doubt the words in Anon., 60 N. Y. 262, referred to by the learned judge as so infinitely more injurious than those he was construing, would be libelous per se if written. In fine, throughout the opinion, the definition of slander is applied to libel. Nothing said therein may, therefore, serve as authority or help here.

I find only one case similar to the present one, viz., McBride v. Ellis, 9 Rich. Law, 313. There a simple obituary notice or advertisement in a newspaper, only stating name, residence, age and day of death of the plaintiff, who was in fact alive, was held in an action for damages to be libelous per se, in that it exposed the plaintiff to ridicule. But if the view there taken be correct, that a finding of malice in the defendant by the jury was necessary in order to give a verdict for the plaintiff, the charge on that head in the present case was erroneous. The stress of the charge and of the opinion there was that the matter had to be published maliciously to be a libel, and the headnote is: "An obituary notice of one living, if conceived and published falsely and maliciously, is a libel." But malice in the defendant is not, and never was, an essential ingredient in an action for damages for an ordinary libel or slander. It is only necessary where the occasion of the speaking or publishing of the defamatory words was qualifiedly privileged. There malice in the defendant has to be shown, and is a necessary ingredient of the cause of action, in order to defeat the privilege. The common saying that malice is essential to maintain all civil actions for slander or libel is an inadvertence, and no judge or writer who has considered it has accepted it. It is folly, for no matter how good one's motives may have been in speaking or publishing unprivileged defamatory matter, that constitutes no defense to an action for damages therefor. No verdict for the defendant in a civil action for ordinary libel or slander could stand upon a charge by the trial judge to the jury, that if they found no malice in the defendant the verdict must be for the defendant. That is the charge for a criminal case, but not for a civil case, unless it be one of qualified privilege. And the long struggle to have the libel depend

upon malice even in criminal cases, and to have that question submitted to the jury, makes one of the most interesting chapters in the history of our individual rights.   Malice in a civil action for unprivileged libel or slander has to do only with the question of whether smart money may be awarded in addition to the actual damage.   It has always seemed strange to lawyers that some text writers and judges in defining libel in reference to civil actions should quote Hamilton's definition of a criminal libel in his argument in the criminal case of People v. Croswell, 3 Johns. Cas. 354, viz.:   "A libel is a censorious or ridiculing writing, picture or sign, made with a mischievous and malicious intent towards government, magistrates or individuals." See incorrect quotation of it in Moore v. Francis, 121 N. Y. 204, 23 N. E. 1127.   A libel to be a criminal offense must be published with a "mischievous and malicious intent," or maliciously; but not so in order to sustain an action for damages, and Hamilton never thought of saying so, much less of forever being quoted as having said so. Failure to keep in mind the difference between a criminal and a civil action for libel on this question of malice, has led to most of the vexation and confusion about malice in civil actions; and like failure to observe such difference as between qualifiedly privileged, and unprivileged, utterances or publications, is responsible for the rest of it.   Prince v. Brooklyn Daily Eagle, 16 Misc. Rep. 186, 37 N. Y. Supp. 250; Ullrich v. Press Co., 23 Misc. Rep. 168, 50 N. Y. Supp. 788; Shanks v. Stumpf, 23 Misc. Rep. 264, 51 N. Y. Supp. 154.   In the said dissenting opinion in the Gates Case from which I have quoted, it is said (page 240, 155 N. Y., and page 773, 49 N. E.): "Without malice, express or implied, there could be no libel;" and that, it is said, "would defeat the action."   In Moore v. Francis the contrary is most explicitly said, viz.: "The evidence renders it clear that no actual injury to the plaintiff was intended by the defendants, but it is no legal excuse that defamatory matter was published accidentally or inadvertently, or with good motives and in an honest belief in its truth."   121 N. Y. 207, 23 N. E. 1129.   That the defendant is liable for the actual damage done by the speaking or publishing of the defamatory matter, even though he spoke or published it "with good motives," but that nevertheless he is not liable if he spoke or published it "without malice," is a self-contradictory proposition. Such coupling together of "good motives" and "malice" is a confusion of ideas originating in the failure to distinguish which has already been mentioned.   Surely, we are not to be authoritatively told, that although the defendant's motives are in fact of no consequence on the question of maintaining the action, it is nevertheless necessary for the trial judge and jury to conjure up, "imply," and falsely attribute to the defendant an imaginary, fictitious, sham and wholly nonexisting malice, in order to avoid granting a nonsuit or rendering a verdict for the defendant.   Such a proposition is without support in reason, and is current at all only from the mass of unconsidered dicta which text writers, and, as must be owned, some judges, have collected and apparently credited.   If an instance of a civil action for slander or libel could be found, where there was a nonsuit or a verdict for the defendant on the ground of no malice in

the defendant, unless in a case of qualified privilege, it would be of no authority whatever. Even a lunatic, who is incapable of motive or malice, and therefore not liable to smart money, is liable for the actual damage done by his libels or slanders, the same as for his other torts. Ullrich v. Press Co., supra.

I think the effect of the publication concerning this plaintiff must have been to subject him to general ridicule, which in legal presumption causes damage, and that makes it libelous per se. Everybody would say of him: "There goes the dentist who committed suicide." His profession, or craft, was properly considered on the question of how much actual damage must have been caused to him by the publication.

The motion is denied.