(94 App. Div. 314.)

### DAILY v. ENGINEERING & MINING JOURNAL.

(Supreme Court, Appellate Division, First Department. May 13, 1904.)

1. LIBEL—CONSTRUCTION OF ARTICLE—CHARGE OF EMBEZZLEMENT.

To publish of the manager of a corporation, upon the property of which attachments have been issued, that "his extravagance startled people, and he finally got the company into trouble," and that "the whole failure is the result of extravagant management," does not charge him with embezzlement.

2. SAME—SUFFICIENCY OF COMPLAINT.

Plaintiff in a libel suit alleged that he had been engaged in financial and. commercial enterprises involving the use and management of large sums of money intrusted to him by other persons, and that his reputation had been that of a competent, energetic, and honorable man of business; that defendants, in their paper, published of him that the company had had attachments placed on its property, that plaintiff had figured largely in the company, that his extravagance startled people, and finally got the company into trouble, and that he was deposed and no longer in California, meaning thereby that plaintiff had caused the company to become financially embarrassed by using its funds for his own extravagance, and that because thereof he was removed from his position as manager and had absconded; that they also published that the whole failure of the company ·was the result of extravagant management, that plaintiff was its local manager, and that finally its· property was attached by creditors, etc.; that these statements concerning plaintiff were wholly false, and that by reason thereof plaintiff had been prevented from following his usual vocation, and from engaging in profitable enterprises, and his reputation as a man of business had been greatly damaged, and he had been held up to public scorn, ridicule, and contempt. *Held*, that whether the language of the libel be construed as holding plaintiff up to public scorn and ridicule, or whether its tendency was to inflict special damage on his business reputation, the complaint stated a good cause of action.

Van Brunt, P. J., dissenting.

Appeal from Special Term, New York County.

Action by William H. Daily against the Engineering & Mining Journal. From an interlocutory judgment overruling a demurrer to the complaint, defendant appeals. Affirmed.

The complaint is as follows:

"First. That the plaintiff, at all the times hereinafter stated, was and still is a citizen of the United States, residing within the city, county, and the state of New York, and has for many years last past been engaged in important financial and commercial enterprises in the United States, involving the use and management by the plaintiff of large sums of money intrusted to him by other persons residing in the United States and in foreign countries; and the plaintiff's reputation, both in the United States and elsewhere, has always been that of a competent, energetic, and honorable man of business, and one

to whom the management of large enterprises, requiring the exercise of economy, good judgment, and integrity, could be safely intrusted.

"Second. That, as the plaintiff is informed and believes, and therefore alleges, the defendant at all times hereinafter stated was, and still is, a corporation organized and existing under the laws of the state of New York, in the United States of America, and was and still is the owner and publisher of a newspaper called 'The Engineering and Mining Journal,' which said paper is of great general circulation in the city of New York, in the United States, in the Kingdom of Great Britain, Ireland, and elsewhere.

"Third. That on or about the 28th day of February, 1903, the defendant maliciously composed and published of and concerning this plaintiff in said newspaper, the Engineering and Mining Journal, a certain article containing the false and defamatory matter following, to wit: 'Attachments have been placed on the property of the Copper King Mining Company, Limited, at Clovis, Fresno county, though the mine is still at work. Captain C. Harvey, representing the London stockholders, is in San Francisco endeavoring to straighten affairs up for the principal owner, Frank Gardner, of London. This is the mine in which W. H. Daily figures largely. His extravagance startled people, and finally got the company into trouble. He was deposed, and is no longer in California. The bills will doubtless be paid, but it remains to be seen whether the mine pays as well as the stockholders were led to expect. It has a smelter at Seal Bluff Landing, on San Francisco Bay'—meaning and intending thereby that plaintiff caused Copper King Company, Limited, to become financially embarrassed by using its funds for his own personal extravagance, and that because thereof he was removed from his position as manager by said corporation, and absconded from the state of California.

"Fourth. That on or about the 18th day of July, 1903, the defendant maliciously composed and published of and concerning this plaintiff in said newspaper, the Engineering and Mining Journal, a certain article containing the false and defamatory matter following, to wit: 'San Francisco, July 8th. From our special correspondent. The Copper King Mining Company, Limited, with a mine at Clovis, Fresno county, and a smelter on the upper shores of San Francisco Bay, has filed its schedules of debts and property in the United States courts; and this shows an indebtedness of $614,423, of which $508,695 is unsecured. The total assets are given as $306,704. They count the real estate at $99,400, and the machinery at $180,235. The mine at Fresno is only valued in the statement at $85,400, covered by attachments. The whole failure is the result of extravagant management. The breaking up of the company involves San Francisco and London financiers and banks. A number of San Francisco machinery firms are also sufferers. The deal for the sale of the mine and its equipments was managed by W. H. Daily and Frank Gardner, and Gardner figures as a creditor for $207,742, cash advanced. Daily was the local manager. Finally the mine was attached by miners and other creditors, and work was stopped. Then the attorney of the San Francisco Board of Trade petitioned the United States Circuit Court to declare the company insolvent. A large amount of money was sunk in exploiting the mine and conducting the smelter.'

"Fifth. That the statements contained in each of said articles of and concerning this plaintiff were and are wholly false and untrue, and that by reason thereof plaintiff has been prevented from following his usual vocation, as set forth in paragraph first hereof, and has been prevented from engaging in profitable enterprises, and his reputation as a capable, honorable, and energetic man of business has been greatly damaged, and he has been held up to public scorn, ridicule, and contempt, to his great damage in the sum of $50,000, for which the plaintiff demands judgment against the defendant."

To this complaint the defendant interposed a demurrer, which was overruled, and from the judgment entered thereon the defendant appeals.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

Charles E. Lydecker, for appellant.
Joseph P. Nolan, for respondent.

O'BRIEN, J. The plaintiff by his innuendo insists that the charge made against him is embezzlement, but we think that the language employed is susceptible of no such meaning, there being nothing therein which would indicate that it was intended to state that the plaintiff had stolen or made away with the money of the mine in any other way than by extravagant management, the gravamen of the charge being that his extravagance startled people and finally got the company into trouble. In speaking of the cause of the failure of the mine, the article states that "the whole failure is the result of extravagant management."

Our attention has been called to the recent decision in the Court of Appeals of Morrison v. Smith, 177 N. Y. 366, 69 N. E. 725, wherein it was held (headnote) that:

"When the plaintiff in an action of libel has by innuendo put a meaning upon the alleged libelous publication which is not supported by its language or by proof, the court may nevertheless submit the case to the jury if the article is libelous per se."

Had the articles charged the plaintiff with embezzlement—the meaning which by his innuendo he ascribes to the language used—it would be libelous per se. But disregarding the innuendo, and taking the language in its natural import, if the articles are libelous per se, then it would be the duty of the court to submit the case to the jury. The articles describe the financial condition of the mining company, saying that there were attachments obtained by creditors against it and the indebtedness exceeded the total assets, and then follows language from which the inference is natural that it was intended to state that such condition was brought about by the plaintiff's extravagant management; and, as the result, we have the charge against the plaintiff that, by extravagance in handling the business of the company, he caused it to become insolvent.

In Odgers on Libel and Slander (1st Am. Ed. p. 20) it is said:

"In cases of libel any words will be presumed defamatory which expose the plaintiff to hatred, contempt, ridicule, or obloquy, which tend to injure him in his profession or trade. * * * Everything printed or written which reflects on the character of another, and is published without lawful justification or excuse, is a libel, whatever the intention may have been. The words need not necessarily impute disgraceful conduct to the plaintiff."

And in Newell on Defamation, Libel and Slander, p. 68, the general doctrine is thus stated:

"Every man has a right to the fruits of his industry, and, by a fair reputation and character in his particular business, to the means of making his industry fruitful. At common law, therefore, an action lies for words which slander a man in his trade or defame him in an honest calling, as to say of a merchant or tradesman he is a bankrupt."

It is alleged that the plaintiff is engaged in important financial and commercial enterprises in the United States, involving the use and management by him of large sums of money intrusted to him by others, and that his reputation has always been that of a competent, energetic, and honorable man of business, and one to whom the management of large enterprises, requiring the exercise of economy, good judgment, and integrity, could be safely intrusted. It is also alleged that, by reason of the statements contained in the articles which are

wholly false and untrue, the "plaintiff has been prevented from following his usual vocation, * * * and has been prevented from engaging in profitable enterprises, and his reputation as a capable, honorable, and energetic man of business has been greatly damaged, and he has been held up to public scorn, ridicule, and contempt, to his great damage."

Each of the publications complained of charges the plaintiff with extravagance, if not with incompetence, in the conduct of the kind of business in which he is engaged. The defendant's contention is that the articles contain merely characterizations of the plaintiff's conduct which are not libelous; but if we take this view the complaint would not be demurrable, because we have the colloquium or special averment that such characterizations were false and damaged the plaintiff in his particular business. Words not actionable in themselves may become so when spoken of a man in his trade, where it is shown by a colloquium or special averment that they touched him therein. Newell on Defamation, Slander and Libel, p. 68. And, apart from whether such an action for libel is stated, we have here sufficient to present a question of fact as to whether the charge was libelous, because the plaintiff avers that it was false, and that it injured him in his business reputation, and that he was "held up to public scorn, ridicule, and contempt, to his great damage."

For the purpose of determining the sufficiency of a complaint, we have the following rules laid down in Morrison v. Smith, supra:

"If the language is unambiguous, whether it is actionable becomes a question of law; but if ambiguous, and capable of an innocent as well as of a disgraceful meaning, the question becomes one for the jury to settle. When the defamatory meaning is not apparent, innuendo is necessary. * * * If they [the words] are capable of such a meaning, however improbable it may appear, the jury should say whether they may be so understood."

Charges, even though they do not impute to plaintiff disgraceful conduct, would be actionable if their tendency is to injure him in his particular business, calling, trade, or profession. Ordinarily the characterization of a person as extravagant would not be libelous, because persons are not necessarily lessened in the esteem of others merely because they are extravagant; but a charge that one's extravagance has brought to bankruptcy a company or enterprise in which others are interested may injuriously affect any man, and particularly one whose business it is to act as the manager of large enterprises in which others have invested money. We think, therefore, that the complaint, taking the fair import of the articles, namely, that the plaintiff, as manager, so extravagantly conducted the affairs of the company as to injure its credit to such an extent that attachments in favor of creditors were allowed against it, in connection with the averments as to the plaintiff's business or calling, states a good cause of action. Because, whether or not we construe the language as holding the plaintiff up to public scorn or ridicule, which would be a question of fact for the jury, or whether we conclude that its tendency, as claimed, was to inflict special damage on his business reputation and calling, in either view the complaint states a good cause of action.

Our conclusion is that the demurrer was properly overruled, and that the interlocutory judgment should be affirmed, with costs, with leave to

the defendant to withdraw the demurrer, and to answer upon payment of costs in this court and in the court below.

INGRAHAM, McLAUGHLIN, and HATCH, JJ., concur. VAN BRUNT, P. J., dissents.

INGRAHAM, J. I concur with Mr. Justice O'BRIEN. The plaintiff alleges that he was engaged in important financial and commercial enterprises in the United States, involving the use and management by plaintiff of large sums of money intrusted to him by other persons residing in the United States and in foreign countries, and that the statements contained in each of the articles published of and concerning the plaintiff were and are wholly false and untrue, and that by reason thereof the plaintiff has been prevented from following his usual vocation, as set forth in paragraph first of the complaint, and has been prevented from engaging in profitable enterprises, and his reputation as a capable, honorable, and energetic man has been greatly damaged. In Moore v. Francis, 121 N. Y. 199, 23 N. E. 1127, 8 L. R. A. 214, 18 Am. St. Rep. 81, Judge Andrews, in delivering the opinion of the court, says:

"The other class fall, for the most part at least, within the third specification in the opinion of Chief Justice De Gray—of words which tend to injure one in his trade or occupation. The case of words affecting the credit of a trader, such as imputing bankruptcy or insolvency, is an illustration. The action is maintainable in such a case, although no fraud or dishonesty is charged, and although the words were spoken without actual malice. The law allows this form of action not only to protect a man's character as such, but to protect him in his occupation, also, against injurious imputations. It recognizes the right of a man to live, and the necessity of labor, and will not permit one to assail by words the pecuniary credit of another, except at the peril, in case they are untrue, of answering in damages."

And the opinion cites with approval the case of Whitaker v. Bradley, 7 D. & R. 649, where it is said:

"Whatever words have a tendency to hurt, or are calculated to prejudice a man who seeks his livelihood by any trade or business, are actionable."

The articles published by defendant, if believed, would certainly injure the reputation of a man engaged in the management of important financial and commercial enterprises involving the use of large sums of money by others. No one would care to intrust a man with large sums of money to aid in important financial commercial enterprises if his extravagance when engaged in like enterprises had been such as to startle people and get a company with which he was connected into trouble. The libel, charging that a mine managed by the plaintiff had become largely insolvent as a result of extravagance, would necessarily impute to the person responsible for the management a lack of proper business capacity, and would thus be a direct charge of business incapacity, which would entitle him to maintain an action for damages caused by the publication.

O'BRIEN and HATCH, JJ., concur.