(111 App. Div. 465)

## McDONALD v. SUN PRINTING & PUBLISHING ASS'N.

(Supreme Court, Appellate Division, Second Department. March 16, 1906.)

1. LIBEL—PUBLICATION LIBELOUS PER SE.

A newspaper publication, charging a student of and writer on criminology and kindred subjects, and a former employé in the government service as specialist in education as a preventive of pauperism and crime, as a "humbug" and a "psuedo scientist" is libelous per se.

[Ed. Note.—For cases in point, see vol. 32, Cent. Dig. Libel and Slander, §§ 4, 80–88.]

2. SAME—COMPLAINT—ALLEGATION OF SPECIAL DAMAGES—NECESSITY.

A complaint in libel which alleges a publication libelous per se need not allege special damages.

[Ed. Note.—For cases in point, see vol. 32, Cent. Dig. Libel and Slander, §§ 213, 214.]

Appeal from Special Term, Kings County.

Action by Arthur McDonald against the Sun Printing & Publishing Association. From an interlocutory judgment sustaining a demurrer to the complaint on the ground that it does not state facts sufficient to constitute a cause of action, plaintiff appeals. Reversed.

See 92 N. Y. Supp. 37.

The action is for a libel in the publication by the defendant of the following:

### "Congress and the Patho-Social Humbug.

"To the Editor of the New York Sun—Sir: I was very much pleased to see your vigorous and healthy editorial in the Sun of Feb. 18, exposing the patho-social humbug and 'specialist in education,' Arthur MacDonald. There is indeed cause for wonderment that his filthy nonsense should have been tolerated for so long a period. As an apostle of Lombrosian doctrines he has the distinction of being, perhaps, both the shallowest and cheekiest American promulgator of the half truths and whole falsehoods, the fallacies and follies, of this Italian School of Degeneracy. 'Doctor' Arthur MacDonald is never so happy as when he can delve in the mire and mud of derelict humanity, but for the bystanders, this 'horrible example,' for one, is not a useful or instructive exhibit. That any committees of Congress should fail to appreciate the nauseous character of this individual's 'work' is to be deplored by decent people, and the writer sincerely hopes that the Sun will continue fearlessly to expose this persistent self-advertiser and psuedo-scientist.

"New York, Feb. 19.                              Anthropos."

Argued before JENKS, HOOKER, RICH, MILLER, and GAYNOR, JJ.

Wales F. Severance, for appellant.
Franklin Bartlett, for respondent.

JENKS, J. The plaintiff alleges that he was graduated from the University of Rochester and from the Union Theological Seminary, and that thereafter, in this country and in Europe, he was a university student of medical subjects, especially of a medico-legal and criminological nature; that he served the government at Washington as a clerk, under the title "Specialist in Education as a Preventive of Pauperism and Crime." He further alleges that he was widely and favorably known here, in Canada, and in Europe both as a student of criminology and a writer of various publications on that and kindred subjects.

He complains that the defendant had printed certain articles relating to his vocation, work, and writings, which were followed by the publication of the letter, upon which his action is brought.

The word "humbug" has become accepted as good English, and has an approved and well-understood meaning, as imposter; deceiver; cheat. Cent. Dict.; Worcester's Dict.; Standard Dict.; Stormonth's Dict.; Imperial Dict.; March's Thesaurus. Writers of pure and elegant English, like Lowell and Whipple, use it without the apology of quotation marks or of italics. In Nolte v. Herter, 65 Ill. App. 430, the appellant uses the word "humbug" in conversation, and the court say:

"Humbug is an imposition; imposture; deception; and as a verb signifies to impose upon; to cozen; to swindle—all implying intention to misrepresent by the assertion of what is not the actual condition, or the suppression or concealment of what is."

"Pseudo" is derived from the Greek "pseudein," to cheat; to deceive; and is defined as a "quasi prefix in compounds of Greek origin, meaning 'false'; 'counterfeit'; 'spurious'; 'sham.' It is freely used as an English prefix with words of any origin." Cent. Dict. Stormonth, a most accurate lexicographer, derives it from the Greek "pseudes," lying; false; and defines it as "a word frequently prefixed to another, and meaning 'false, spurious.'"

I think that the letter brands the plaintiff as an imposter, and as a false or sham scientist, and that therefore it is a libel upon its face. In Smith v. Stewart, 41 Minn. 7, 42 N. W. 595, the words held libelous per se were "irresponsible, unadulterated, first-class humbug and fraud." In Meas v. Johnson, 185 Pa. 12, 39 Atl. 562, the words were, "You are a first-class fraud, and of the first water." In Commonwealth v. Clap, 4 Mass. 163, 3 Am. Dec. 212, the term was "liar, scoundrel, cheat, and swindler." The books contain many other cases where equipollent words were pronounced libelous per se. I think it clear that the letter passed beyond any legitimate criticism of the work of the plaintiff to stamp him personally as an imposter, and that it cannot be held, as a matter of law, that the plaintiff pleads no cause of action therefor. Triggs v. Sun Printing & Pub. Ass'n, 179 N. Y. 144, 154, 71 N. E. 739, 66 L. R. A. 612, 103 Am. St. Rep. 841; Whistler v. Ruskin, cited in Odgers on Libel and Slander (page 35). The words "had a tendency to hurt, or are calculated to prejudice the plaintiff in his calling," and are actionable per se. Moore v. Francis, 121 N. Y. 199, 23 N. E. 1127, 8 L. R. A. 214, 18 Am. St. Rep. 810.

In the view I take of this demurrer, it is not necessary to pass upon the point whether special damages are well pleaded, for the plaintiff was not bound to plead them at all. Moore v. Francis, 121 N. Y. 204, 23 N. E. 1128, 8 L. R. A. 214, 18 Am. St. Rep. 810; Baylies, Code Pleading, 240, and authorities cited. When pleaded, it seems that the rule is the same as in an action for slander. Newell on Libel and Slander, p. 865.

The interlocutory judgment is reversed, with costs, and the demurrer overruled, with costs, with leave to the defendant to plead over within 20 days. All concur.