**Edna Wright, Appellee, v. F. W. Woolworth Company, Appellant.**

Opinion filed September 16, 1935.

E. H. SCHWARZENBACH and CASE, VOYLES & STEMM-LER, all of St. Louis, for appellant.

PHILIP G. LISTEMAN, of East St. Louis, for appellee.

Mr. Presiding Justice Edwards delivered the opinion of the court.

This is an action for slander, in which the complaint charges that plaintiff entered defendant's store in Mt. Vernon for the purpose of purchasing a drink of root beer, and while therein, in the presence and within the hearing of divers persons, defendant, by and through its agents, falsely stated, concerning plaintiff (who is a white woman): "We can't serve you because you are a nigger"; that a clerk of defendant, addressing the assistant manager, and referring to plaintiff, said: "Must I serve her?" and that the assistant manager replied: "No, she is a nigger."' It was alleged that the words were false and defamatory and resulted to her damage and injury.

A motion was made to dismiss the complaint as not stating a cause of action. This motion was overruled, and defendant answered, in substance denying the utterance of the words alleged. Upon a trial before a jury, the latter awarded plaintiff the sum of $2,000, and the court, after overruling defendant's motions for judgment *non obstante,* and for a new trial, rendered judgment upon the verdict.

The principal question involved is, whether the spoken words as set out in the complaint, are, *per se,* or of themselves, slanderous. The complaint, as will hereafter be pointed out, does not aver any special damages as resultant from the speaking of such words, hence plaintiff's right of recovery rests upon whether the alleged statements were, *per se,* slanderous. *Strauss v. Meyer,* 48 Ill. 385.

In considering whether a defamatory charge is actionable or not, the distinction between oral and written words must be kept in mind, as the same rules of law do not apply to libel, as to slander, the law of the former being wider than that of the latter. Defamatory matter, printed and published, may be actionable *per se,* while the same words, orally spoken,

would not be so, except they occasion special damage. *Pollard v. Lyon,* 91 U. S. 225; *Moore v. Francis,* 121 N. Y. 199, 23 N. E. 1127; *Williams v. Riddle,* 145 Ky. 459, 140 S. W. 661; *Ukman v. Daily Record Co.,* 189 Mo. 378, 88 S. W. 60; *Eggleston v. Whitlock,* 242 Ill. App. 379.

The reasons given for such rule are that words written or printed are in more permanent form, are susceptible of wider circulation, and hence capable of inflicting greater injury than those merely spoken; also, that a defamation made in script or print necessitates some measure of deliberation, and so, of itself, imputes an evil intention to the writer, as a person who reduces a defamation to writing, is, by law, presumed to have convinced himself of its truth, and to have acted accordingly. *Bolton v. Walker,* 197 Mich. 699, 164 N. W. 420; *Prosser v. Callis,* 117 Ind. 105, 19 N. E. 735; *Byram v. Aiken,* 65 Minn. 87, 67 N. W. 807. With such considerations in mind, the courts have declared the rule as to what spoken defamatory words are, of themselves, and, without proof of resultant special damage, actionable.

That the common law does not give a right of action for all spoken words, even though they disparage the character of another, is fully declared by courts of the highest standing and respectability, in classifying the various kinds of oral statements which are actionable without allegation or proof of special damage.

There appear to be, at common law, five classes of spoken words which give rise to a cause of action for their false utterance concerning a person, in the presence and hearing of others. They are: 1st, words imputing to the party the commission of a criminal offense; 2nd, words which impute that the party is infected with some contagious disease, where, if the accusation be true, it would exclude the party from society; 3rd, defamatory words which impute to the

party unfitness to perform the duties of an office or employment of profit, or the want of integrity in the discharge of the duties of such office or employment; 4th, defamatory words which prejudice such party in his or her profession or trade; and 5th, defamatory words which, though not in themselves actionable, occasion the party special damage. *Pollard v. Lyon, supra; Williams v. Riddle, supra; Moore v. Francis, supra; McDowell v. Bowles,* 53 N. C. 184; *Barnett v. Phelps,* 97 Ore. 242, 191 Pac. 502.

That the foregoing is the rule of the common law appears to be thoroughly established, and, as such, is the law of this State, save where it has been changed by statute. Ill. State Bar Stats. 1935, ch. 28, ¶ 1 (sec. 1, ch. 28, Smith-Hurd R. S.). The classifications thus enumerated are controlling in Illinois, except as the Slander and Libel Act, Ill. State Bar Stats. 1935, ch. 126, ¶¶ 1, 2 (secs. 1 and 2, ch. 126, Smith-Hurd R. S.), has enlarged the rule by providing that false oral accusations of fornication, adultery and false swearing, are deemed slander, and actionable as such.

That the words counted upon do not come within the first two divisions above enumerated is obvious, and that upon the complaint, as drawn, they are not included within the 3rd and 4th classes seems equally clear.

Plaintiff alleges that the words caused injury to her business. There is lacking, however, the necessary antecedent averment as to the nature of her business, and no allegation appears that she held any office or employment; hence such statement of damage is merely a conclusion, based upon no properly pleaded premises. In truth the complaint contains nothing descriptive of plaintiff, or her situation in life, except that she is a white woman and a resident of the City of East St. Louis.

Spoken words, to be actionable *per se*, on the ground that they affect a person in his or her office or employment, business or calling, must be such as tend to prejudice such individual therein. *Campbell v. Morris*, 224 Ill. App. 569; *Eggleston v. Whitlock, supra; Moore v. Francis, supra.* Furthermore, if recovery is sought upon such ground, the nature of the business, office or employment must be set forth in the complaint as a substantive and traversable fact. *Houk v. Hicks*, 11 Ind. App. 190, 38 N. E. 864; *Geary v. Bennett*, 65 Wis. 554, 27 N. W. 335; 13 Ency. of Pl. & Pr., p. 38. Moreover, in order to maintain an action for oral defamation, based upon words claimed to have injured a business or occupation, and as being slanderous *per se*, it is requisite that the complaint set forth that such words were used of the plaintiff, relative to his or her business or occupation. *Harkness v. Chicago Daily News Co.*, 102 Ill. App. 162; *Barnes v. Trundy*, 31 Me. 321; *Van Epps v. Jones*, 50 Ga. 238. No such averment is pleaded herein, either expressly or by implication. As such indispensable allegations are lacking in the complaint, it cannot be said that there is anything pleaded to bring it within either the 3rd or 4th classes of false spoken words which are alone and of themselves actionable.

The utterances complained of, as set forth in the complaint, not being embraced within the category of spoken words, slanderous *per se*, prescribed by the common law, and not included within the enlargement of same, by our statutory sections previously quoted, would not appear to be slanderous unless special damages were alleged and proved.

Plaintiff, however, insists that notwithstanding the general rule of the common law, the courts have passed upon the specific question here involved, and that the weight of authority sustains the contention that the words charged to have been uttered in the complaint, are actionable *per se*.

So far as we are advised, or have been able to ascertain, the proposition has not been passed upon by the courts of this State; hence it is an open question in this jurisdiction. The authorities are divided in their holdings, and to determine wherein the weight of authority lies necessitates a consideration of the various decisions.

In *Johnson v. Brown,* 4 Cranch (C. C.) 235, Fed. Cas. No. 7375, it was held that it was not actionable, *per se,* to say of a white man that he is a "yellow negro."

The well considered and authoritative case of *Williams v. Riddle,* 140 S. W. 661 (Ky.), ruled that a verbal accusation that a white man was a negro, and his mother a mulatto, was not slanderous *per se.*

*Barret v. Jarvis,* 1 Ohio 83, note, involved an oral statement to a white person: "I understand that you are going to marry Barret's daughter. I am sorry you should, for they are akin to negroes." The court declared that such words were not of themselves actionable.

In *McDowell v. Bowles,* 53 N. C. 184, the words complained of were that plaintiff, a white clergyman, was told he had no right to vote, because he was a free negro. The words were held not to be actionable unless special damages were alleged and proven.

Plaintiff cites a number of decisions to the contrary. An examination of same reveals that *Stultz v. Cousins,* 242 Fed. 794, was a libel suit, wherein, as we have seen, the rules differ materially from those where the charge is slander.

*Morris v. State,* 109 Ark. 530, was the trial of an indictment, which made it criminal slander "to bring into disrepute the good name or character of such person so slandered." The court's holding that it was slanderous to speak of a white woman that she was the descendant of a negro was based upon the court's observation of the social conditions of the State.

*Eden v. Legare,* 1 Bay 171, *Wood v. King,* 1 Nott & M., 184, and *Atkinson v. Hartley,* 1 McCord L., 203, all South Carolina cases, decided respectively in 1791, 1818 and 1821, held that to call a white person a negro or mulatto, was, *per se,* actionable, for the reason that, if true, such person would be deprived of all civil rights and denied the privilege of trial by jury. It will be noted that such cases were decided at a time in American history when the colored race had few, if any, rights before the law.

*Scott v. Peebles,* 2 Smedes & Marshall's Rep., 546 (Miss.), was a case where similar words to those in question were held slanderous *per se,* by virtue of a local statute which gave a right of action for words spoken, ''which are, in common acceptance, considered an insult and lead to violence and breach of the peace.''

*Dobard v. Nunez,* 6 La. Ann. 294, and *Spotorno v. Fourichon,* 40 La. Ann. 423, were slander suits wherein it was ruled that verbal charges that a white man was a negro, were actionable. In the *Spotorno* case the court stated that such words were actionable, ''since such charge, in view of the social habits, customs and prejudices prevailing in this State, is calculated to inflict injury and damage.'' It is apparent that such decision rested upon local conditions existing in Louisiana.

*Spencer v. Looney,* 116 Va. 767, 82 S. E. 745, quotes verbatim from *Spotorno v. Fourichon, supra,* and adopts both its reason and conclusion, the court saying: ''What was said in that case with respect to social habits, customs, etc., prevailing in Louisiana, applies with equal force to any State or locality in which the white and negro races are established as citizens.'' It thus appears that the reason given by the Louisiana court in *Spotorno v. Fourichon* is the basis of the holding in the Virginia case.

In *Bagwell v. Rice & Hutchins Atlanta Co.,* 38 Ga. App. 87, 143 S. E. 125, the point in issue was whether

the action was barred by the statute of limitations, and the question presented in the instant case was not there involved or considered.

In 36 Corpus Juris, p. 1172, sec. 50, citing most of the reported decisions herein referred to, the rule is declared to be that to write or print of a white man that he is a negro is libelous *per se,* but that the general rule is that to orally call a white person a negro or mulatto is not of itself slanderous, and is only actionable where special damages are resultant therefrom. The decisions to the contrary are therein stated to be because of the social habits, customs and prejudices in such jurisdictions.

The authorities which hold such spoken words are not, *per se,* slanderous, are found, upon examination, to rest upon the principles of the common law governing the action of slander; while those which rule otherwise are based upon local conditions or local statutes, or rendered at a time when the colored race was without civil rights.

The principles of the common law, as to the classes of spoken words which are slanderous *per se,* together with their enlargement by our statutes, are the law of this State, and as such binding upon us. The words complained of do not come within such limitations, and hence, in our opinion, are not actionable without allegations and proof of special damage.

The charges of the complaint, as to plaintiff's damage, were that the premises ''tend to exclude her from society, and by reason of said false and defamatory publication this plaintiff has been injured in her reputation as well as in her business, and has sustained mental suffering, to her damage. . . .'' Such allegations have been held to be ''descriptive only of general, and not special damages.'' *Craig v. Proctor,* 229 Mass. 339, 118 N. E. 647; *Reporters' Ass'n of America v. Sun Printing & Publishing Ass'n,* 186 N. Y. 437, 79 N. E. 710.

No special damage having been averred, and the words set forth not being slanderous *per se,* the complaint failed to state a cause of action, and the court erred in overruling the motion to dismiss.

The complaint not stating a cause of action, the defendant did not, by pleading over after its motion to dismiss was overruled, waive its rights to urge the question upon appeal. *People v. Powell,* 274 Ill. 222; *Chicago, R. I. & P. Ry. Co. v. People,* 217 Ill. 164.

For which reasons we are constrained to reverse the judgment, and under the authority conferred upon this court by section 92 of the Civil Practice Act, Ill. State Bar Stats. 1935, ch. 110, ¶ 220, judgment is rendered herein for the defendant, with costs.

*Judgment reversed.*