(23 Misc. Rep. 264.)

SHANKS v. STUMPF et al.

(Supreme Court, Trial Term, Kings County. April, 1898.)

1. LIBEL—TRUTH AS JUSTIFICATION—PLEADING.
    In an action for libel in publishing statements concerning some unnamed individual, defendant cannot show the truth of the libel, either in justification or in mitigation of damages, where his answer, after denying that it was published of and concerning plaintiff, averred that the articles published were true, but did not state that the article was true as to plaintiff.

2. SAME—ANSWER—PARTIAL DEFENSE.

An answer denying that the libel was concerning plaintiff, but averring its truth, does not permit evidence to be given thereunder showing the libel was true of plaintiff, since Code Civ. Proc. §§ 507, 508, provides that partial defenses must be separately stated, and must be expressly stated to be a partial defense to the entire complaint, or to one or more separate causes of action therein set forth.

3. SAME.

An answer alleging that the "facts forming the foundation of said alleged libel were examined into and verified before publication," but not stating what the facts were, is insufficient, either as a justification or in mitigation of damages, since the particular facts showing the statements to be true must be set forth, unless the libel itself consists of a specific statement of facts.

4. SAME—PUNITIVE DAMAGES.

Smart money may be awarded where a libelous publication was made maliciously.

5. SAME—EVIDENCE OF MALICE.

The libel of itself is competent evidence to show that it was published maliciously.

6. SAME.

Malice in publishing a libel may be found solely from the fact that it was made in reckless disregard of the rights of plaintiff or of others generally.

7. SAME—MATTER LIBELOUS PER SE.

A publication, stating, in effect, that the editor of a newspaper, devoted to giving information to investors concerning municipal bonds, used it to threaten and persecute dealers in bonds who refused to subscribe for or advertise in the paper, his practices being "utterly indefensible, infringing upon, if not actually crossing, the line of downright criminality," is libelous per se, as imputing dishonest conduct.

8. SAME—QUESTION OF LAW.

It is a question of law for the court whether a publication is libelous, where there is no ambiguity about the words used.

Action by William F. G. Shanks against Anthony Stumpf and others for libel. Motion on the minutes to set aside the verdict of $5,000. Reduced to $1,500.

Sanders Shanks, for plaintiff.
James W. Ridgway, for defendant.

GAYNOR, J. The libelous publication is a severe stricture upon some unnamed individual. That the plaintiff was meant by it had to be proved by evidence dehors. The answer denies that it was published of and concerning him. The answer then states, "that the facts forming the foundation of said alleged libel were received by the defendant in the ordinary course of business," that they "were examined into and verified before publication," and that they were then published by the defendants "in the honest belief that said facts were true, and without any malice or evil design whatsoever, and defendants aver that the aforesaid article is true." This is no allegation that the article is true of the plaintiff. On the contrary, the answer denies that it was published of and concerning him. But if understood as an allegation that it is true of the plaintiff, it is not a good answer of the truth either as a defense, or as a partial defense, viz. in mitigation of damages; nor is it in terms so pleaded, as is required. Code Civ. Proc. §§ 507, 508. What the "facts forming the foundation of said alleged libel," and

which the answer says "were examined into and verified before publication," are, is not specified. Such defenses must set forth the particular facts which show the libelous statements to be true. A mere general averment of the truth of the libel does not amount to either defense, unless in a case where the libel itself consists of a specific statement of the facts. Wachter v. Quenzer, 29 N. Y. 547; Lanpher v. Clark, 149 N. Y. 472, 44 N. E. 182; McKane v. Citizen, 53 Hun, 132, 6 N. Y. Supp. 171; Kingsley v. Kingsley, 79 Hun, 569, 29 N. Y. Supp. 921. It follows that the evidence offered by defendant to prove the truth of the libel was properly excluded.

The charge that if the libelous publication was made maliciously, the jury could give smart money damages therefor, was correct. The libel itself was competent evidence of such malice, and the defendants did not become witnesses themselves, or offer any evidence of their motive, or of how they came to publish it. And the charge that if the jury found that the publication was made in wanton or reckless disregard of the rights of the plaintiff, or of others generally, such malice could be found therefrom alone, was also correct. Holmes v. Jones, 121 N. Y. 461, 24 N. E. 701; Prince v. Brooklyn Daily Eagle, 16 Misc. Rep. 186, 37 N. Y. Supp. 250; Ullrich v. Press Co., 23 Misc. Rep. 168, 50 N. Y. Supp. 788.

The portions of the publication which the court specifically mentioned in charging the jury that the publication was libelous per se, and entitled the plaintiff to a verdict if the jury found that it was published of and concerning him, are the following:

"The arrogance and infallibility which spring from monopoly had become a source of great irritation to the public, which the original publication was intended to serve, and in course of time led the management of that newspaper to degenerate into practices utterly indefensible, infringing upon, if not actually crossing, the line of downright criminality; and the unquestioned utility of the service, if properly performed, enabled the publication to which we allude to adopt a despotic attitude toward the whole bond-dealing fraternity, interfering with the business of individual houses, dodging their managers with half-veiled threats of persecution in its pages, and exercising a general terrorism, from which there did not appear to be any feasible avenue of escape."

"Some time ago the city of Camden, N. J., made a private sale of bonds, as the law permitted, it being optional on the part of the proper authorities to take such method of selling the bonds or canvassing them publicly. It appears that the purchaser of these bonds had refused to do any further business with the proprietor of the news sheet, upon whose methods he now sits in judgment, and to spite the bond dealers, he then began to assail the credit of the city which had sold the securities."

"This assertion of exclusive control over the sources of news is adopted only to reinforce the importance of his sheet to bond dealers, when the latter refused to be coerced into subscribing or advertising under the threat of being publicly scourged."

The plaintiff was the editor and manager of a newspaper devoted to the giving of information concerning municipal bonds to investors, and the libel concerned his conduct in that capacity. These extracts show its tenor, which amounted to a charge that the plaintiff used the said newspaper and his said control of it to threaten, dog, spite and persecute dealers in bonds who refused to subscribe for or advertise in his said newspaper, and to cry down the bonds they purchased, his practices being "utterly indefensible, infringing

upon, if not actually crossing, the line of downright criminality." There being no ambiguity about the words, it is always a question of law for the court whether they are libelous.    Moore v. Francis, 121 N. Y. 198, 23 N. E. 1127.    The words here are certainly very derogatory to the plaintiff.    They impute to him dishonest, dishonorable, immoral and degrading conduct, and that constitutes a libel.    Odgers, Sland. & L. c. 2, pt. 1.

I think as such verdicts go that this verdict is too high, and it will therefore be set aside unless the plaintiff stipulate to reduce it to $1,500.