Edward S. Stokes, Respondent, *v.* William E. D. Stokes, Appellant.

*Interlocutory judgment — no appeal lies from an order directing its entry — what words constitute a libel.*

No appeal lies from an order or decision of the court directing the entry of an interlocutory judgment.

An action for libel is maintainable upon proof of the publication of any words which have a tendency to hurt or are calculated to prejudice a man who seeks his livelihood by any trade or business, or of any publication which tends to diminish the respectability of the person to whom they relate, and to expose him to disgrace and obloquy, although they do not impute the commission of a crime, and no special damages are alleged or proved.

APPEAL by the defendant, William E. D. Stokes, from an inter-
locutory judgment of the Supreme Court in favor of the plaintiff,
entered in the office of the clerk of the county of New York on the
15th day of December, 1893, overruling said defendant's demurrer
to so much of the complaint as is contained in the first cause of
action therein, and also from the order or decision of the Supreme
Court, entered in said clerk's office on the 15th day of December,
1893, directing the entry of said interlocutory judgment and on
which the same was made and entered.

This was an action brought for libel against the defendant for
maliciously causing to be published in the New York *Herald*, the
following article:

"*To the Editor of the Herald:*

"In the letter of E. S. Stokes (meaning the plaintiff) which
appeared this morning, he (meaning the plaintiff) proposes an arbi-
tration of our (meaning the plaintiff's and defendant's) controversy,
and offers what is equivalent to a bet of $10,000 on the result. The
meaning of this — escape from the argument coming on in court
to-day, and to stave off the judgment I will be entitled to enter
against him for about $38,000 next week — was revealed by the
remark of his counsel in open court, that he (meaning the plaintiff)
was short of money and could not pay back what he (meaning the
plaintiff) had borrowed from me (meaning the defendant), only if I
first gave up not a part but the whole of the collateral he (meaning
the plaintiff) had pledged for this and his other guarantees and
obligations to me (meaning the defendant).

"In all his career this is the biggest and silliest 'bluff' he ever
attempted, although he is a prince in that line. What has become
of the profits of the Hoffman House for the last two years — more
than $100,000 a year — no one knows, but by this confession (mean-
ing that the said Hoffman House had earned as profits $100,000 for
two years, and that the said plaintiff had confessedly appropriated
the same to his own use in fraud of the rights of the defendant and
others as stockholders in said Hoffman House), public charities and
private ones may explain it. When his money is gone he must gain
time (meaning that the said plaintiff had squandered the corpora-
tion's money in a disreputable way, and that his object in proposing
an arbitration of the matters in dispute between him and the defend-

ant was to gain time to raise money and means to replace his misappropriations).

"As to his notion of an arbitration, he may as well throw aside this worn-out side play, together with some of his worn-out sins. After choosing the arbitrament of the court, he now shrinks from it. He prefers a private arbitration because then he is not sworn, nor held to the rules of evidence (meaning that the plaintiff's motive in proposing an arbitration of the disputes aforesaid was that his testimony, being without the sanction of an oath, he could testify falsely, and without risk of the consequence of perjury). He has admitted openly that he has no defense to my claim for the repayment of the money he borrowed, and as a last desperate resort found this the most plausible plea for delay, but there is nothing to arbitrate. I am reminded of the sentence from De Quincy: 'If once a man indulges in murder, very soon he becomes to think little of robbing; from robbing he comes next to drinking, and from that to ill manners and procrastination. Once enter the downward path, and you know not where you will stop.'"

*A. H. Holmes*, for the appellant.

*M. H. Regensburger*, for the respondent.

VAN BRUNT, P. J.:

So far as the appellant has appealed from the order or decision of the court directing the entry of an interlocutory judgment, the appeal must be dismissed, with ten dollars costs.

It has been held by the Court of Appeals that such an order is not appealable, which rule has been followed by this court. It is true that different decisions have been made by the Superior Court of this city, but it is manifest from the decision of the Court of Appeals in *Cambridge Valley Bank* v. *Lynch* (76 N. Y. 514) that the only appeal is from the judgment. (*Wright* v. *Chapin*, 26 N. Y. Supp. 825.)

The appellant claims that no sufficient cause of action is set out in the complaint upon the ground that the alleged libelous matters must be read without the innuendoes, and that without resort to such innuendoes no cause of action is set out. In this we are of opinion that he is clearly mistaken. The rule is well settled that defama-

tory words, in common parlance, are such as impute some moral delinquency or some disreputable conduct to the person of whom they are spoken; and that even actions for slander may be founded upon such imputations; and that such action lies in some cases where the words impute no criminal offense, where no attack is made upon the moral character, nor any charge of personal dishonor. It has been said that the first and larger class of actions are those brought for the vindication of reputation in its strict sense, against damaging and calumnious aspersions; and that the other class for the most part are those brought for the purpose of recovering damages for words which tend to injure one in his trade or occupation. (*Moore* v. *Francis*, 121 N. Y. 199.) And it has been further held that whatever words have a tendency to hurt, or are calculated to prejudice a man who seeks his livelihood by any trade or business, are actionable. And the rule seems to be well stated by the learned judge in the court below that publications which tend to diminish the respectability of the person to whom they relate, and to expose him to disgrace and obloquy, although they do not impute the commission of a crime, are libelous and actionable, although no special damages are alleged or proved.

In the case at bar the words of the publication in question clearly tend to affect the credit and standing of the plaintiff, and impute not only disreputable conduct but moral delinquency to him.

We think, therefore, that a cause of action is set out in the complaint, and that the judgment appealed from should be affirmed, with costs, with leave to the defendant to withdraw his demurrer and to answer over on payment of costs of appeal and of the court below.

O'BRIEN and FOLLETT, JJ., concurred.

Judgment affirmed, with costs, with leave to the defendant to withdraw his demurrer and to answer over on payment of costs of appeal and of the court below.