## KLAW v. NEW YORK PRESS CO., Limited.

(Supreme Court, Appellate Division, First Department. April 8, 1910.)

1. LIBEL AND SLANDER (§ 19*)—LIBELOUS ARTICLES—CONSTRUCTION.

In deciding whether or not an article is libelous, the scope and object of the entire article is to be considered, and such construction put on its language as would naturally be given to it.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 98, 99; Dec. Dig. § 19.*]

2. LIBEL AND SLANDER (§ 123*)—LIBELOUS ARTICLES—QUESTION OF LAW.

If an article alleged to be libelous is susceptible of only one meaning, then the question whether or not it is libelous per se is a matter of law for the court.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 357–359; Dec. Dig. § 123.*]

3. LIBEL AND SLANDER (§§ 86, 123*)—LIBELOUS ARTICLES—MEANING—INNUENDO—QUESTION FOR JURY.

Where an article alleged to be libelous is susceptible of more than one meaning, one of which would make it libelous, then it is the office of an innuendo to charge the libelous meaning, and it is for the jury to determine whether the libelous meaning would be ascribed to it by readers of ordinary intelligence.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 205–208, 356–359; Dec. Dig. §§ 86, 123.*]

4. LIBEL AND SLANDER (§ 86*)—PLEADING—INNUENDO—LIBEL PER SE.

If an article pleaded be libelous per se, without any innuendo, it is not demurrable, even though an innuendo be pleaded of which it is not susceptible.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 205–208; Dec. Dig. § 86.*]

5. LIBEL AND SLANDER (§ 89*)—GENERAL DAMAGES—INNUENDO.

Where an article is not necessarily libelous per se, but, by innuendo, a meaning of which it is susceptible is ascribed to it which makes it libelous per se, general damages may be recovered without pleading or proving special damages.

[Ed. Note.—For other cases, see Libel and Slander, Dec. Dig. § 89.*]

6. LIBEL AND SLANDER (§ 9*)—NEWSPAPER ARTICLES—PARTNERSHIP.

To publish of the present members of a firm engaged in producing musical plays, etc., that a former member, who furnished the money for the venture, was forced into retirement by the present members, who seized the whole profits of his brains and capital for themselves, is libelous per se.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 80–90; Dec. Dig. § 9.*]

7. LIBEL AND SLANDER (§ 86*)—LIBELOUS ARTICLES—QUESTION FOR JURY.

Even if a complaint, alleging that defendant published an article stating that plaintiffs forced their former partner into retirement and seized the whole profits of his brains and capital, does not set up an article which is libelous per se, yet where, by innuendo, a meaning is ascribed to it that plaintiffs fraudulently forced the former member into retirement, and by their wrongful acts obtained all the profits, etc., it is for the jury to say whether such meaning could not be ascribed to it, and hence the complaint is not demurrable.

[Ed. Note.—For other cases, see Libel and Slander, Dec. Dig. § 86.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes ·

Appeal from Special Term, New York County.

Action by Marc Klaw against the New York Press Company, Limited. From an interlocutory judgment overruling a demurrer to the complaint, defendant appeals. Affirmed, with leave to answer over.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, and MILLER, JJ.

De Lancey Nicoll, for appellant.

David Gerber, for respondent.

LAUGHLIN, J. The action is for libel, and the demurrer is upon the ground that the complaint does not state facts sufficient to constitute a cause of action.

The defendant is the publisher of the New York Press, a daily newspaper, and the alleged libel was published therein. The question presented by the appeal is whether the article was libelous per se.

- The plaintiff alleges by way of inducement, among other things, that with one Erlanger, under the firm name of Klaw & Erlanger, he was engaged in the business and profession of producing and booking plays and dramatic and musical compositions for public performances; that he was formerly a member of the firm of Jefferson, Klaw & Erlanger, of which Charles Jefferson was a member; that, on account of the withdrawal by plaintiff's firm of advertisements from the defendant's said newspaper, the defendant maliciously published therein on the 10th day of March, 1909, of and concerning the plaintiff, the following:

"Charles Jefferson (meaning the said Charles Jefferson, the former partner of this plaintiff), the son of Joseph Jefferson, who is now running an orange grove in Florida, furnished the money for the original ventures of the firm of Jefferson, Klaw & Erlanger (meaning the said firm of which this plaintiff was a member). The two surviving partners of that firm (meaning this plaintiff and the said Abraham L. Erlanger) forced him (meaning the said Charles Jefferson) into retirement and seized the whole profits of the brains and capital of their associate (meaning the said Charles Jefferson) for themselves (meaning this plaintiff and the said Abraham L. Erlanger)."

The plaintiff then alleges, by way of innuendo, as follows:

"That in and by the said libelous article it was charged, and intended by the defendant to charge, and was understood by persons reading the said article as charging, that the said Charles Jefferson, the former partner of this plaintiff, furnished the money which was required in the business and for the enterprise of the firm of Jefferson, Klaw & Erlanger, of which this plaintiff was a member, that he has been compelled to and now is engaged in running an orange grove in Florida, compelled and driven so to do by the wrongful acts of this plaintiff and the said Abraham L. Erlanger, who fraudulently, corruptly, and illegally seized, took possession of, and appropriated for themselves the profits of the brains and capital of the said Jefferson and wrongfully and illegally appropriated to themselves the capital and profits belonging to the said Jefferson."

In deciding whether or not an article is libelous, the scope and object of the entire article is to be considered together, and "such construction put upon its language as would naturally be given to it." More v. Bennett, 48 N. Y. 472, 476. If the article be susceptible of only one meaning, then the question whether or not it is libelous per se is to be decided as matter of law by the court. Morrison v. Smith,

177 N. Y. 366, 69 N. E. 725; Moore v. Francis et al., 121 N. Y. 199, 23 N. E. 1127, 8 L. R. A. 214, 18 Am. St. Rep. 810. If it be susceptible of more than one meaning, one of which would make it libelous, then it is the office of an innuendo to charge the libelous meaning, and it would be for the jury to determine whether or not the libelous meaning would be ascribed to it by readers of ordinary and average intelligence. If the article be libelous per se without any innuendo, it is not demurrable, even though an innuendo be pleaded of which it is not susceptible. Morrison v. Smith, supra. But if it be equivocal or ambiguous and not necessarily libelous per se, and a libelous meaning of which it be susceptible in one view that may reasonably be taken of it be charged by innuendo, then it will withstand a demurrer, for the plaintiff would in that event be entitled to have the jury instructed that if the publication would be understood by the reader of average and ordinary intelligence and ability, in the libelous sense, then the article is libelous per se, and the plaintiff would be entitled to recover general damages without pleading or proving special damages. Bergmann v. Jones, 94 N. Y. 51; Turton v. N. Y. Recorder Co., 144 N. Y. 144, 38 N. E. 1009; McDonald v. Press Pub. Co. (C. C.) 55 Fed. 264; Press Pub. Co. v. McDonald, 63 Fed. 238, 11 C. C. A. 155, 26 L. R. A. 53; Townshend on Slander and Libel, § 338; 25 Cyc. 453. The demurrer, therefore, must be sustained if the article be libelous per se without the innuendo, or if it be susceptible of the meaning ascribed to it in the innuendo which unquestionably would make it libelous per se.

Of course, it was not a libel on the plaintiff, or on any one, to publish that one of his former partners, who furnished the money for the original ventures of the firm, is now running an orange grove in Florida. The libel, if any, is in the final sentence of the article. It is there charged, in substance, that the plaintiff and Erlanger "forced" Jefferson "into retirement and seized the whole profits" of his brains and capital for themselves. Was this intended, and would it be understood, as complimentary, or as an innocent announcement of the dissolution of the copartnership, or was it intended, and would it be understood, as reflecting on the plaintiff's business methods in a manner calculated to affect and affecting his standing in his profession and calling in the business world? It seems to me that this question may be decided as matter of law, and that the article is libelous per se without any innuendo. It may be said, I think, as matter of law, that the article would be understood as charging, at least, that the plaintiff and Erlanger took undue advantage of Jefferson, their partner, if it would not be understood as charging that they appropriated to themselves profits of the business belonging to him.

In Moore v. Francis et al., supra, Judge Andrews, writing for the court, with respect to a libel affecting one's trade, occupation, or business, said:

"The law allows this form of action, not only to protect a man's character as such, but to protect him in his occupation also against injurious imputations. It recognizes the right of a man to live, and the necessity of labor, and will not permit one to assail by words the pecuniary credit of another, except at the peril, in case they are untrue, of answering in damages. The principle is clearly stated by Bayley, J., in Whittaker v. Bradley, 7 D. & R. 649: 'What-

ever words have a tendency to hurt, or are calculated to prejudice, a man who seeks his livelihood by any trade or business, are actionable.' When proved to have been spoken in relation thereto, the action is supported, and, unless the defendant shows a lawful excuse, the plaintiff is entitled to recover without allegation or proof of special damage, because both the falsity of the words and resulting damage are presumed."

In Stokes v. Stokes, 76 Hun, 314, 28 N. Y. Supp. 165, Presiding Justice Van Brunt, considering this precise question, said:

"And it has been further held that whatever words have a tendency to hurt, or are calculated to prejudice, a man who seeks his livelihood by any trade or business, are actionable. And the rule seems to be well stated by the learned judge in the court below that publications which tend to diminish the respectability of the person to whom they relate, and to expose him to disgrace and obloquy, although they do not impute the commission of a crime, are libelous and actionable, although no special damages are alleged or proved."

Although this article does not directly relate to acts of the plaintiff in his business and profession of producing and booking plays, it does indirectly, and would naturally, if believed, affect him in his business and profession, which necessarily involves the making of contracts, for most people dislike to deal with men who would be alert to take advantage of them and are known to have been guilty of sharp practices.

Moreover, the rule with respect to an innuendo, as stated in the opinion of the Court of Appeals in Morrison v. Smith, supra, is:

"If the words are incapable of the meaning ascribed to them by the innuendo and are, prima facie, not actionable, the complaint should be dismissed. If they are capable of such a meaning, however improbable it may appear, the jury should say whether they may be so understood."

Tested by that rule, it would seem that it would be for the jury to say whether or not the words published would be understood in the senses, or in one of the senses, charged in the innuendo.

It follows, therefore, that the interlocutory judgment should be affirmed, with costs, but with leave to defendant to withdraw its demurrer and to plead over on payment of the costs of the appeal and of the demurrer. All concur.