Robert P. McKee, Respondent, *v.* Louis F. Robert, Appellant.

Third Department, July 7, 1921.

Libel — action by manager and editor of newspaper for personal damages — allegation that plaintiff was injured as manager and editor need not be preceded by formal phrase " of and concerning " his business — said question cannot be raised first on appeal — refusal of court to charge jury upon " each independent statement in the pamphlet " not error — evidence establishing malice — verdict not excessive — technical errors disregarded under Code of Civil Procedure, § 1317.

In an action by a newspaper manager and editor to recover personal damages for libel based on a pamphlet printed and published by the defendant, in which the plaintiff alleged that he was injured in his reputation, good name and credit as manager and editor of a newspaper of which he was in control, it was not necessary for him to precede said allegation by the formal phrase " of and concerning " his business.

Furthermore, since defendant did not take advantage of said defect by demurrer or on the trial, and took no exception to the charge of the court that the jury were to examine into the proposition as to whether the plaintiff had been damaged by the article in *his* business or profession, the defendant cannot raise the question on appeal.

It was not error for the court to refuse to charge the jury upon each independent statement in the pamphlet and to say in effect that if the statement so taken bodily from its surroundings was not libelous, it made up no part of plaintiff's cause of action; the whole libel was a part of the complaint, and detached statements cannot be set apart to destroy the connection of the whole.

The evidence clearly establishes malice and the verdict for $3,000 in favor of the plaintiff was not excessive.

Moreover, the judgment is so obviously just that any technical error should be disregarded under section 1317 of the Code of Civil Procedure.

Appeal by the defendant, Louis F. Robert, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Essex on the 21st day of September, 1920, on the verdict of a jury for $3,000.

*Weeds, Conway & Cotter* [*T. B. Cotter* and *F. E. Smith* of counsel], for the appellant.

*Patrick J. Tierney,* for the respondent.

KILEY, J.:

The appellant swears that, in order to get even with the respondent for criticising, in the newspaper of which he is editor and manager, a fight between appellant and another resident of Ausable Forks, in the lobby of the theatre in that place, he prepared, had printed and circulated throughout that country, of and concerning the respondent, the following vicious and malicious article, viz.:

## " THE RECORD'S RELIABILITY

" The Adirondack *Record* has published a very pretty little article about the class of entertainments that the Bridge Theatre is furnishing its patrons, especially the one given on Friday evening, December 26, which they say has not been equaled for true degeneracy and filthiness in a very long time. Now, we wish to say that if any one would like to know something about filth and degeneracy, they need not wait for the evening and the Theatre, but call on the editor of the *Record* at any time and listen to his stories of himself. '

" We would like very much to have them explain the meaning of the word ' profanity,' also, as the term LIAR was the nearest thing to profanity that was used during the so-called entertainment, and, if that is classed as profanity in the *Record's* dictionary, we would like to get a copy.

" The item regarding the Chairman of the Red Cross offering to referee a fight between the parties who were quarreling must have been inserted to help fill up the columns, or as a sample of the *Record's* news, as the person referred to was in New York City at the time, and did not learn of the trouble until he saw the brilliant talk in the *Record*.

" In a recent issue of that ably (?) edited sheet — The Adirondack *Record* — under date of December 26, we believe this ' great ' reformer, or performer, referred to ' that terribly corrupt town of Black Brook ' and to its citizens as bootleggers, and to the town authorities as incompetents.

" All you have to do is to listen to this actor a few minutes, and you will realize that his hat covers the worst corruption in the entire town.

" Again listen to him, and you will learn from his own lips that he is a ' booze fighter,' gambler and immoral man. Yet this hypocrite — every time he hears of any one using a little

' fire water,' as he calls it, or perhaps committing some little offense, he rushes into print to vilify the party; when, as a matter of fact, judging from what he says, he punishes more ' fire water ' than any ' gutter pup ' was ever known to.

" This great apostle of prohibition said that he attended a meeting of the Board of Supervisors at Elizabethtown recently, and upon his return, he told anybody that wanted to listen to him, that ' at a certain dinner, we paid Ben Stetson $235 for whiskey.' This may be so, and may not; however, MORAL: Ben, do not trust any low-grade talking machine. A slight jar sometimes set these self-winders off, and they tell things.

" We would suggest to this hypocrite that if he wants to publish a real sensational story — something that would eclipse anything that he has ever printed along the lines of degeneracy and filthiness — to devote several columns about himself every week for the year of 1920. You cannot camouflage the people.

" In conclusion, we wish to say that the most of the representative citizens of Ausable Forks unite in saying that if the *Record's* chief representative could be treated to a ride out of the town on a fence rail with a nice coat of tar and feathers as wearing apparel, it would be as good a thing as could happen to the town."

Before having the article printed the appellant visited an attorney, a district attorney, and swears his purpose in so doing was to avoid any penalty the law might exact for doing a citizen such damage as such a publication was calculated to produce. That he admits the preparation, the publication, and the circulation of said article, and for the purposes above set forth, appears from the record. This action is the result of such publication and circulation. To the complaint in the action the appellant, defendant, makes three defenses — justification, mitigation, and with an audacity, superb and incomprehensible, he swears that the handbill was honestly and truthfully prepared without malice or desire to injure the plaintiff, respondent, here. From the evidence of the defendant it clearly appears that such allegation is false. The complaint, which set forth the libel in full, alleges that by reason of its publication plaintiff was injured in his reputation (individually), and that he was injured in his

reputation, good name and credit as manager and editor of the newspaper of which he was in control. The trial resulted in a verdict for the plaintiff. The appellant urges that the allegation as to damage to his reputation as editor, etc., should have been preceded by the cut and dried allegation, " of and concerning " his business. There are several answers to that objection. *First.* The defendant did not demur; such defect, if it is a defect, appeared on the face of the complaint. *Second.* It was tried without objection comprehending appellant's now alleged position. *Third.* It was submitted to the jury without exception to the charge in that regard, viz., the main charge — this does not refer to requests to charge. The complaint asks for personal damage, not for damage to his business. The paper plaintiff publishes is not owned by him; the loss of credit and reputation that he complains of is not the loss and credit to the business, but to himself. He, as an individual, by such publication, was crippled and lessened in his ability to do the business he was required to do to fill the position of trust and service with which he had been intrusted. The time is passed when courts will permit great wrong to go unredressed because of some slight technical error; that form plays less part than substance in the administration of the law to-day, as applied to libel cases, may be seen from an examination of *Morrison* v. *Smith* (177 N. Y. 366); *Klaw* v. *New York Press Co., Ltd.* (137 App. Div. 686); *Metcalfe* v. *Bill Board Publishing Co.* (176 id. 859); *Corwin* v. *McKenzie* (190 id. 953). The court submitted the claim of the plaintiff to the jury in the following language: " If the plaintiff is entitled to recover in this action, he would be entitled to recover, *first,* what is known as compensatory damages. That is, such damages as would naturally flow from the publication of the article — if you find that he has been damaged by the article, and that is always provided you find that he has been damaged. *Secondly,* you will examine into the proposition as to whether he has been damaged by this article in *his* business or profession," not whether the business of the corporation for which he works has been damaged, but has the plaintiff, in his capacity to do that business for his employer been damaged. No exception was taken, and appellant says he did not have to except, that he could sit idly by and let the charge go

to the jury and raise the question for the first time on appeal. Our attention is called to *Fremd* v. *Halsted* (179 App. Div. 910) as laying down the doctrine that an exception was not necessary to raise the point. An examination of that case discloses that the judgment was so excessive and obviously unjust that it was reversed for that reason. Again in *Barden* v. *N. Y. C. R. R. Co.* (181 App. Div. 306) it was shown that a practically complete defense was available to the defendant in the contributory negligence of the plaintiff. The court charged that there was no contributory negligence. The Appellate Division held that the theory upon which he so held was wrong; that the question making up part of the case on the part of the defense was affirmatively excluded; that is much different from the question we have here. The whole libelous article was set forth in the complaint, and was before the jury. The plaintiff had the right to go to the jury on the meaning of the article without reference to any innuendo and the jury had a right to say that each of the allegations as to his individual damage, viz., being held up to public ignomy and disgrace and also the crippling of his influence as editor, by destroying his reputation, thereby entailing a personal loss, had or had not been proved. (*Metcalfe* v. *Bill Board Publishing Co.*, *supra*.) If the article is susceptible of two meanings, or even if a wrong innuendo is pleaded, the case must go to the jury. (*Klaw* v. *New York Press Co., Ltd.*, 137 App. Div. 688,) There was nothing wrong with the theory upon which this case was tried. The case was one properly sent to the jury. (*Triggs* v. *Sun Printing & Pub. Assn.*, 179 N. Y. 144.) The respondent in his brief makes an error in a quotation from *Sanderson* v. *Caldwell* (45 N. Y. 398, at p. 405 of the opinion). The correct quotation is " when the words spoken have such a relation to the profession or occupation of the plaintiff that they directly tend to injure him in respect to it, and to impair confidence in his character or ability, when, from the nature of the business, great confidence must necessarily be reposed, *they are actionable*, although not applied by the speaker to the profession or occupation of the plaintiff." The words above quoted, " they are actionable, " are quoted by respondent as reading " they are *not* actionable." The difference is clearly apparent

when applied to the facts in this case. The quotation from the charge (*supra*) was a proper presentation of the issue. (*Woods* v. *Gleason*, 18 App. Div. 401, last paragraph of the opinion.) The ground most strenuously urged as fatal to this judgment is the refusal of the court to charge the jury upon " *each independent statement in the pamphlet,* " and in effect to say that if the statement so taken bodily from its surroundings was not libelous, it made up no part of plaintiff's cause of action. The defendant in his attempted justification or mitigation made no effort to indicate any such procedure and his answer is so drawn that the court could not intelligently do so and at the same time preserve the plaintiff's rights to have the relation of the statements to each other go to the jury. Upon the trial the only separation attempted by appellant was to swear different witnesses as to different and distinct statements which it was claimed plaintiff had made about himself, along the line of the evidence as given by the appellant. The court charged the jury fully and fairly. The article was before them; they were the judges of the facts, their application and relation to each other. Upon a trial of an indictment for libel the jury are the judges of both the law and the fact. (Code Crim. Proc. § 418.) The same procedure, viz., separating statements, was sought in *Morrison* v. *Smith* (177 N. Y. 368). The court says: " The question is a clean cut one, which we must determine, and it is whether, because the plaintiff has, by innuendo, put a meaning upon the language, she is bound by it and, however *libelous* the language *standing alone*, she must fail in her action, if that meaning is not supported by the language, or by proof. I am not inclined to concur in so restricted a view of the plaintiff's position and I am not aware of any decision of this court compelling it." The libel, the whole libel, is part of the complaint and detached statements cannot be set apart to destroy the connection of the whole. Appellant urges that no malice was shown. The whole publication reeks with malice and the evidence of plaintiff leaves no chance for a mistake in its character. He says the verdict is excessive. No, it is moderate. He says the plaintiff did not successfully bear the burden of proof. Added to the evidence given by plaintiff in reply to what defendant claimed he, plaintiff, said of himself,

we have the fact that common sense is some times a force in any balance, and considering the position which plaintiff occupied, the knowledge that the jurors must have had of him, and his standing in the community, the jurors undoubtedly reached the conclusion, and I think rightly so, that such a man would not say such things of himself. It is evident that plaintiff through his paper criticised acts of the inhabitants, committed in public, when they were against law and order and not for the best interest of that community. From the records and from the lips of such of those criticised as went upon the stand, the truth of such criticism is in a large degree maintained. The judgment is so obviously just that any technical error should not disturb it. (Code Civ. Proc. § 1317.)

The judgment should be affirmed, with costs.

Judgment and order unanimously affirmed, with costs.